**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 95-50140**
**No. 97-50401**

_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**JUAN GILBERTO GUERRERO;**
**APOLONIO PASTRANO, a/k/a Polo;**
**ROBERTO ANTONIO DAVILA, a/k/a Robert Davila;**
**FELIPE BENAVENTA GAMEZ, a/k/a Felipe Gamez;**
**JAMES MENDIOLA,**

**Defendants-Appellants.**

_____

**Appeal from the United States District Court**
**for the Western District of Texas**
**(SA-93-CR-184)**

_____

October 22, 1997

Before REAVLEY, BARKSDALE, and STEWART, Circuit Judges.

PER CURIAM:[1]

Appellants were convicted for conspiracy to possess with intent to distribute marijuana, as well as on substantive possession and distribution charges. We **AFFIRM**.

I.

---

[1] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

This case involves an extensive marijuana distribution operation centered in south Texas, occurring from approximately mid-1992 through mid-1993. The operation revolved around Metroplex Trucking and Refrigeration, which was owned in part by unindicted co-conspirator Frank Figueroa, and which was the distribution center for large amounts of marijuana that came from many sources, including Mexican shipments arranged by Appellant Juan Gilberto Guerrero. The marijuana was "fronted" to middlemen, including Appellants Apolonio Pastrano, Roberto Antonio Davila, and Felipe Benaventa Gamez, who in turn sold it to others for a profit. Appellant James Mendiola acted as a "broker", calling Figueroa to inform him of potential buyers.

Guerrero, Pastrano, Davila, Gamez, and Mendiola were charged, along with one other individual, with conspiracy to possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and some, with substantive counts of possession and distribution, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (aiding and abetting). In mid-1994, a jury convicted Appellants, as charged, with the exception of Davila, who was acquitted on one of the substantive charges.

While the appeal from these convictions was pending, Davila, Gamez, and Mendiola filed motions for a new trial and requested an evidentiary hearing based on newly-discovered information about Government witnesses at their trial. In mid-1997, the district court denied the motions without a hearing.

II.

The Appellants contest their convictions and sentences on several grounds, including double jeopardy, evidentiary error, variance between the indictment and the proof at trial, and sentencing error. Finally, seeking a new trial, they charge that impeachment evidence was suppressed by the Government.

Although sentencing and the initial appeal from the convictions and sentences (No. 95-50140) dates from early 1995, oral argument was stayed in October 1996, pending the district court ruling on the new trial motion. The appeal from that ruling (No. 97-50401) was filed in mid-1997. In the interim, one issue raised in the initial appeal was resolved, as discussed below.

A.

Mendiola appeals the denial of his "Motion to Dismiss the Indictment and to Exclude the Admission of Certain Evidence Previously Used by the United States". In a separate proceeding (No. SA-93-CR-191-1; No. 95-50177 in our court, the opinion for which was rendered the same day as this opinion), Mendiola was convicted shortly before the trial in this case of conspiring to manufacture and distribute marijuana. Prior to sentencing, some of Mendiola's property was seized in a civil forfeiture action against him (No. SA-93-CA-0496). Mendiola contends that both the prior criminal proceeding and the civil forfeiture action placed him in

prior jeopardy for the charges in this case, in violation of the Fifth Amendment.

1.

Mendiola raised the double jeopardy argument *vis-a-vis* the civil forfeiture action in his appeal from the prior criminal trial, and it is addressed by this court in our separate opinion in No. 95-50177 (as noted, rendered the same day as the opinion in this case).  Briefly stated, *in rem* civil forfeitures are not "punishment" for purposes of double jeopardy analysis.  **United States v. Ursery**, ___ U.S. ___, 116 S. Ct. 2135, 2147 (1996); **United States v. Perez**, 110 F.3d 265, 267 (5th Cir. 1997).

2.

Mendiola contends also that his prosecution and sentence in this case violates the Fifth Amendment prohibition against multiple prosecutions or punishments for the same offense.  Unlike the variance arguments of the other appellants, *infra*, who claim that there is not one conspiracy, but several, Mendiola asserts that there is only one overriding conspiracy, which includes the earlier, separately tried case.  Consequently, he contends, he was placed twice in jeopardy for the "same offense".

A double jeopardy claim is a question of law, reviewed *de novo*.  **United States v. Gonzales**, 40 F.3d 735, 737 n.2 (5th Cir. 1994), *cert. denied*, 514 U.S. 1074 (1995).  The Double Jeopardy Clause of the Fifth Amendment prohibits second prosecutions and

multiple punishments for the same offense. ***United States v. Sanchez-Escareno***, 950 F.2d 193, 197 (5th Cir. 1991), *cert. denied*, 506 U.S. 841 (1992). Under double jeopardy analysis, the test for whether an offense is the "same" is "whether each offense has an element not contained in the other". ***United States v. Dixon***, 509 U.S. 688, 696-97 (1993).

Review of the elements of the charged offenses in the two cases reveals that they are not the "same offense" in the context of double jeopardy. Mendiola is charged in this case with three substantive charges of distribution on 10 and 17 December 1992, and 23 June 1993, and with conspiracy to possess with intent to distribute marijuana from July 1992 until 24 June 1993, in the Western and Southern Districts of Texas and in Mexico. In the other case he is charged with possession with intent to distribute on 24 June 1993, and with conspiracy to manufacture and distribute marijuana from 1 September 1992 until 24 June 1993 in the Western District of Texas. Mendiola is the only defendant common to both indictments. As the district court stated in denying Mendiola's motion as frivolous, the separately charged conspiracies "are two separate and distinct conspiracies involving different overt acts, different objects, different dates, different locations, and different co-conspirators."

B.

Guerrero contests the denial of his motion to suppress papers and other items seized from his home, without a search warrant, during his arrest on 24 June 1993. A warrantless search is unreasonable *per se,* and therefore proscribed by the Fourth Amendment, unless subject to an exception to the warrant requirement. *See* **United States v. Richard**, 994 F.2d 244, 247 (5th Cir. 1993). Of course, "one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent". **Schneckloth v. Bustamonte**, 412 U.S. 218, 219 (1973).

After a hearing, the district court found that, prior to the search, Guerrero signed a voluntary consent form, did not have any questions, and stated that he had "nothing to hide"; that there was no coercion and Guerrero was capable of making a voluntary choice and of understanding his rights; and that the search was terminated immediately when consent was withdrawn by him.

Guerrero does not contest that he voluntarily consented to the search, rather that the evidence found in the home *prior* to the consent-withdrawal should be suppressed because the Officers removed the items from the home *after* consent was terminated. Other courts have held that evidence discovered during a lawful, consensual search is not suppressed retroactively when the consent is terminated. *See, e.g.,* **United States v. Guzman**, 852 F.2d 1117, 1122 (9th Cir. 1988) ("evidence found before [consent] revocation

will not be suppressed"); **United States v. Jachimko**, 19 F.3d 296, 299 (7th Cir. 1994) ("where a suspect does not withdraw his valid consent to a search for illegal substances *before* they are discovered, the consent remains valid and the substances are admissible as evidence") (citing **United States v. Dyer**, 784 F.2d 812, 816 (7th Cir. 1986)).

While we have found no cases in this circuit expressly standing for this proposition, *see* **United States v. Ho**, 94 F.3d 932, 935 n.3 (5th Cir. 1996) (finding it unnecessary to reach the Seventh Circuit's "discovery rule"), it is consistent with our holdings in this area. In **Mason v. Pulliam**, 557 F.2d 426, 429 (5th Cir. 1977), we held that an IRS Agent's actions, pursuant to the voluntary consent of the taxpayer, were not rendered invalid when the taxpayer later withdrew his consent. We see no significant distinctions between the facts in **Mason** and those in the instant case.

C.

Appellants contend that the district court erred in admitting documentary and testimonial "drug ledger" evidence. Evidentiary rulings are reviewed for abuse of discretion; and, of course, even if that is found, "the error is not reversible unless the defendant was prejudiced". **United States v. Coleman**, 78 F.3d 154, 156 (5th Cir.), *cert. denied*, ___ U.S. ___, 117 S. Ct. 230 (1996); *see* FED. R. EVID. 103(a).

Appellants contend that the district court erred when it overruled their objections to the admission of "drug ledgers" on the grounds that they were hearsay not subject to the business records exception, not admissible as the statement of a co-conspirator, not properly authenticated, irrelevant, and prejudicial.

1.

Under FED. R. EVID. 801(d)(2)(E), a statement by a co-conspirator, during the course and in furtherance of the conspiracy, is an exception to the hearsay rule. *See **Bourjaily v. United States***, 483 U.S. 171, 175-76 (1987). Appellants maintain that the ledgers could not be admitted as statements by a co-conspirator because they lacked evidence of authorship.

The Government produced evidence at trial linking the Appellants to the ledgers, including the following: the ledgers were found in Appellants' residences; ledgers seized in Guerrero's and Pastrano's homes were identified by analysts, in part, to be in their handwriting; the names "Roberto" (Davila's first name) and "Polo" (Pastrano is known by this name) appear on a ledger seized at Guerrero's residence; Figueroa testified that Pastrano kept records in a black portfolio, in which ledgers were found; and ledgers seized at Guerrero's and Pastrano's residences had interrelated calculations on them. There was sufficient evidence of authorship.

2.

Appellants contend that the court erred in admitting the ledgers because they were not authenticated or relevant because many of them had no dates and no reference to dollars, pounds, or marijuana. The evidence already described, as well as the testimony of several Government witnesses described below, was sufficient to show that the documents were what the Government purported them to be — drug ledgers. Therefore, we find that the district court did not abuse its discretion in finding that the ledgers were authenticated, relevant, and not unfairly prejudicial. *See* FED. R. EVID. 403 and 901(a).

3.

Appellants next claim that the district court erred by allowing the testimony of Government witnesses concerning the "drug ledgers". As they concede, they failed, however, to object to these witnesses at trial; therefore, the standard of review is plain error. ***United States v. Calverley***, 37 F.3d 160, 162-64 (5th Cir. 1994) (en banc), *cert. denied*, 513 U.S. 1196 (1995). To show plain error, Appellants must show (1) error by the district court; (2) that is obvious, clear, or readily apparent; and (3) affecting substantial rights. ***Id.*** And, even then, we "possess the discretion to decline to correct errors which do not 'seriously affect the fairness, integrity, or public reputation of judicial

proceedings'".  *Id.* at 162 (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)).

Several Agents testified that, in their opinion and based on their experience, various documents were drug ledgers.  Appellants have failed to show clear or obvious error by the trial court in allowing such testimony.  *See* *id.*

4.

Finally, Appellants maintain that the district court erred in admitting expert testimony by an FBI Agent concerning the "drug ledgers".  They objected to that testimony on the grounds that it was not accepted in the scientific community, was inadmissible under FED. R. EVID. 704 as testifying about the mental state or condition of the defendants, and was repetitious, bolstering, and cumulative.  Again, the standard of review is abuse of discretion. *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 180 (5th Cir. 1995).

In determining whether to admit expert testimony, the trial court is to focus on the validity of the scientific method and the ability of the testimony to assist the trier of fact. FED. R. EVID. 702.  Here, the Agent was a certified public accountant with extensive training in drug record examination and was employed with the FBI Racketeering Records Analysis Unit.  The testimony concerned the role of ledgers in drug transactions and the meaning and interrelationship of calculations on some of the alleged drug

ledgers admitted at trial.  Appellants contend that there were different interpretations of the evidence and that the district judge eventually terminated the testimony because he felt it was not "helping the jury".  But, neither of these arguments demonstrate that the district court abused its discretion in allowing the testimony.

D.

Guerrero contends that he was unfairly prejudiced by disclosures to the jury of his prior incarceration and his being incarcerated pending trial in the instant case.

1.

The admission of extrinsic acts evidence is reviewed for abuse of discretion. *United States v. McCarty*, 36 F.3d 1349, 1353 (5th Cir. 1994).  Such evidence is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. FED. R. EVID. 404(b).  In assessing whether Rule 404(b) has been violated, a two-part test is employed: (1) whether the evidence is relevant to an issue other than the defendant's character; and (2) whether the evidence possesses probative value that is not substantially outweighed by the danger of unfair prejudice. *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978), *cert. denied*, 440 U.S. 920 (1979).

Guerrero's main contention concerns the following testimony by Moises Perez, a confidential informant:

The problem was, he said to me, that the gentleman from Laredo, Mr. Juan [Guerrero], is a person who's already about fifty-seven years of age or older and has a lot of experience, and he doesn't want to [meet with a person he does not know] because it has happened to him other times *because he has already been in the federal penitentiary*, and he doesn't want any strange person, any unknown person, to go over there without him knowing him or some other person because he doesn't want to lose the place, the stash place where he has the marijuana.

(emphasis added).  This testimony was prompted by a question about why there was a problem with a particular drug deal, not to show conformity with an extrinsic act.

Guerrero contends that he is entitled to a remand for an on-the-record articulation of the **Beechum** test.  Guerrero's brief misleadingly states that Perez's testimony was "admitted over objection".  The record reflects that counsel made hearsay and relevance objections prior to the testimony in which the witness mentioned Guerrero's incarceration, but did not object when the witness actually testified.  At no point did Guerrero request a Rule 404(b) finding at trial, and he is not entitled to a remand for such a finding now.  *See **United States v. Robinson***, 700 F.2d 205, 212-14 (5th Cir. 1983) (requiring "in Rule 404(b) cases an on-the-record articulation by the trial court of **Beechum's** probative value/prejudice inquiry *when requested by a party*") (emphasis added).

- 13 -

2.

One of Guerrero's contentions concerns the following question during voir dire:

> Does the fact that some of the Defendants in this case are in custody awaiting trial cause anyone to believe that because they are in custody they are more likely to be guilty than innocent?

Guerrero asserts that this question deprived him of a fair trial under the Sixth Amendment. But, he provides no authority and therefore has not properly briefed this issue for appeal.

E.

Guerrero, Pastrano, Davila, and Gamez contend that there was a fatal variance between the indictment, which charged a single conspiracy, and the proof at trial, which they claim demonstrated as many as five conspiracies.[2] To prevail on this issue, these Appellants must show a variance between the indictment and the proof at trial that affects their "substantial rights". *United*

---

[2] Confusingly, some Appellants contend that evidence from the two separately-indicted conspiracies (the "home-grown" conspiracy (No. 95-50177), involving James and Elsa Mendiola and their associates, and the "Metroplex" conspiracy, involving Figueroa and his partner, Luis Garza) that was admitted in the immediate case, was also a variance from the immediate indictment. These arguments are better framed as an issue of relevance under FED. R. EVID. 401-403, or criminal conduct under Rule 404(b). Obviously, treating evidence from other trials as a variance from the indictment would subsume Rules 403 and 404(b) to a large extent. As such, the Appellants have not properly raised this issue on appeal and, in any event, have made no showing of abuse of discretion by the trial judge in admitting any specific evidence from the other conspiracy cases.

- 14 -

*States v. Puig-Infante*, 19 F.3d 929, 935-36 (5th Cir.), *cert. denied*, 513 U.S. 864 (1994). Because we find that there was no variance between the indictment and the proof at trial, we do not reach whether these Appellants' substantial rights were prejudiced.

The Government contends that this variance issue should be reviewed only for plain error because these Appellants did not request a multiple conspiracy jury instruction at trial and did not object to the jury instruction given by the court. However, these Appellants are not appealing error in the jury charge, rather that there was a fatal variance between indictment and proof. *See*, *e.g.*, *United States v. Gaytan*, 74 F.3d 545, 552-53 (5th Cir.) (separately considering fatal variance claim and omission of multiple conspiracy instruction), *cert. denied*, ___ U.S. ___, 117 S. Ct. 77 (1996). These Appellants have preserved this issue for appeal because of their numerous, specific objections at trial that evidence of multiple conspiracies varied from the indictment.

The following factors are considered in determining whether a single conspiracy has been proven: (1) the existence of a common goal or purpose; (2) the nature of the scheme; and (3) overlapping participants in various dealings. *United States v. Morris*, 46 F.3d 410, 415 (5th Cir.), *cert. denied*, 515 U.S. 1150 (1995). In analyzing these factors, the court "must affirm the jury's finding that the [G]overnment proved a single conspiracy unless the evidence and all reasonable inferences, examined in the light most

- 15 -

favorable to the [G]overnment, would preclude reasonable jurors from finding a single conspiracy beyond a reasonable doubt". *United States v. DeVarona*, 872 F.2d 114, 118 (5th Cir. 1989) (citations omitted).

Our court has defined "common goal" broadly. *United States v. Richerson*, 833 F.2d 1147, 1153 (5th Cir. 1987). The common goal of the conspiracy at issue was to have a steady supply of marijuana to sell at a profit. These Appellants contend that the evidence produced by the Government at trial showed different suppliers, purchasers, and co-conspirators. However, the evidence allows the inference that suppliers, including Guerrero, sold to middlemen, including Pastrano, Davila, and Gamez, who then sold to others for a profit. Testimony at trial identified Mendiola as a "broker" who would call Figueroa when he knew that others wanted to buy marijuana.

The second factor in determining whether there was a variance is the nature of the scheme. As stated in *United States v. Elam*,

> [w]here the activities of one aspect of the scheme are necessary or advantageous to the success of another aspect of the scheme or to the overall success of the venture, where there are several parts inherent in a larger common plan, ... the existence of a single conspiracy will be inferred.

678 F.2d 1234, 1246 (5th Cir. 1982); *United States v. Perez*, 489 F.2d 51, 62 (5th Cir. 1973) (single conspiracy exists if it "will

- 16 -

not continue without the continuous cooperation of the conspirators"), *cert. denied*, 417 U.S. 945 (1974).

Again, the Government has produced sufficient evidence for the jury to find beyond a reasonable doubt that the success of the conspiracy depended on the continued participation of the defendants. They operated in different roles in the conspiracy in order to accomplish the common goal: to maintain a steady supply of marijuana to sell at a profit. The existence of other sources of supply and other purchasers does not necessarily create new conspiracies, as asserted by these Appellants; in the light of the other evidence presented, contact with these other individuals serves the goal of maintaining a constant supply of marijuana for sale. *See **United States v. Morris***, 46 F.3d at 416.

The third factor in determining the existence of a single conspiracy is the overlapping of participants in the conspiracy. It is well-established that "[t]here is no requirement that every member must participate in every transaction to find a single conspiracy". **Richerson**, 833 F.2d at 1154. The Government produced significant evidence demonstrating the interdependence between the defendants, including the following: Pastrano, Davila, Gamez, and Mendiola acquired marijuana from Metroplex on consignment; Guerrero supplied marijuana for Pastrano and Davila; on one occasion, Mendiola received a book bag containing $15,000 from a confidential informant, and Davila was observed placing in a vehicle two bags of

marijuana weighing 27 pounds; Davila and Mendiola negotiated a deal to sell 8000 pounds of marijuana to a confidential informant in two equal installments; and, as discussed, the words "Roberto" and "Polo", the names of two Appellants, appear on a ledger seized at Guerrero's residence. Taken as a whole, the evidence demonstrates significant overlap among the defendants, with each performing tasks essential to the overall success of the conspiracy.

These Appellants could have objected to the single conspiracy jury instruction or to request a multiple conspiracy jury instruction; as noted, they did not do so. The jury, following its instructions, found Appellants guilty of the charged single conspiracy. The evidence was such that a reasonable juror could find a single conspiracy beyond a reasonable doubt.

F.

Guerrero contends that the evidence was not sufficient to allow a rational juror to convict him of the conspiracy charge. The standard of review for a sufficiency of evidence challenge is more than well-established: viewing the evidence in the light most favorable to the verdict, and accepting all of the jury's reasonable inferences and findings of credibility, the evidence is sufficient if a rational trier of fact could have found that it established guilt beyond a reasonable doubt. *E.g., **United States v. Montoya-Ortiz***, 7 F.3d 1171, 1173 (5th Cir. 1993).

To establish a conspiracy under 21 U.S.C. § 846, the Government is required to prove beyond a reasonable doubt: (1) that two or more persons agreed to violate the narcotics laws; (2) that each co-defendant knew of the conspiracy; and (3) that each voluntarily joined in it. *Id.* at 1173 (internal quotation marks and citation omitted). "Circumstances altogether inconclusive, if separately considered, may, by their number and joint operation ... be sufficient to constitute conclusive proof." ***United States v. Roberts***, 913 F.2d 211, 218 (5th Cir. 1990) (quoting ***United States v. Lechuga***, 888 F.2d 1472, 1476 (5th Cir. 1989)), *cert. denied*, 500 U.S. 955 (1991).

The Government produced a wide array of evidence showing the existence of a conspiracy, of which Guerrero was a voluntary participant, to obtain a steady supply of marijuana for sale. Unindicted co-conspirator Figueroa testified that Guerrero "was a supplier for Pastrano and Robert Davila"; and that "when he got the marijuana from Mr. Guerrero, Mr. Pastrano or Robert Davila would hand [money] to Mr. Guerrero". Figueroa testified that Guerrero played a specific role in the transfer of drugs through Metroplex:

```
Q:    ... What was out at Metroplex on the
      22nd?
A:    Was that on a Monday?
Q:    Yes, sir.
A:    There was [sic] 400 pounds of marijuana
      stored at Metroplex.
Q:    Whose marijuana was that at the time?
A:    That came from Juan Guerrero to Polo
      Pastrano.
```

- 19 -

Figueroa also testified that he brought Guerrero to Metroplex in July of 1992 "to check out the shop to see if it was a good area to unload marijuana".

At trial, defense counsel attempted to show that Figueroa's testimony was not credible because he is a cocaine addict, a five time convicted felon, and testified pursuant to a plea agreement. "It is well established that a conspiracy conviction may be based upon the uncorroborated testimony of a co-conspirator, even when that testimony is from one who has made a plea bargain with the [G]overnment, provided that the testimony is not incredible or otherwise insubstantial on its face." *United States v. Gadison*, 8 F.3d 186, 190 (5th Cir. 1993). "To be considered incredible as a matter of law, a witness' testimony must assert facts that the witness physically could not have observed or events that could not have occurred under the laws of nature." *Id.* (internal quotation marks, brackets, and citation omitted). Figueroa's testimony, tested thoroughly during cross-examination, was not incredible.

Several items seized during the search of Guerrero's residence were admitted into evidence, including: a small amount of marijuana; a scanner programmed to frequencies used by the Laredo Police Department, Texas Department of Public Safety, Border Patrol, and U.S. Customs Service; an envelope with a row of numbers that was identified by an IRS Agent as a "load sheet", which is used to calculate the total drug shipment weight; and various

papers with numbers and calculations identified by Government witnesses as "drug ledgers", discussed *supra*. Those ledgers contained the words "Polo" and "Roberto", the names, as mentioned, of two of the alleged co-conspirators, and the word "cross", which was identified by Government witnesses as referring to crossing the Mexican-American border with drug shipments. And, a Government witness testified that numbers in these ledgers correlated to numbers in other ledgers found at Pastrano's residence.

Moreover, the Government produced a taped conversation on 20 March 1993 in which Pastrano stated that "the ones from [New York] ... they want twelve cars, 1,200", to which Guerrero replied, "Well, what I'm going to send over to you, to begin with, are about four and a half" and "I'm having difficulties here because I don't have money for the people that cross and all that". Figueroa testified that the conversation was in code and explained that Pastrano was asking for 1200 pounds of marijuana, that Guerrero would only give 450 pounds, and that there were difficulties getting the marijuana across the border. In addition, Figueroa testified that he received the 450 pounds of marijuana on the following day. As discussed, it was for the jury to determine whether this testimony was credible.

In the light of such evidence, the jury was presented with more than a sufficient evidentiary basis for its verdict as to Guerrero.

G.

Appellants challenge their sentences under numerous bases. The statutorily defined standard of review for guidelines-based sentences requires that they be upheld unless shown to have been imposed (1) in violation of law; (2) as a result of an incorrect application of the guidelines; or (3) unreasonably outside the range of the applicable guidelines. *E.g., **United States v. McKinney***, 53 F.3d 664, 677 (5th Cir.), *cert. denied*, ___ U.S. ___, 116 S. Ct. 261 (1995).

1.

First, Appellants contend that the district court erred in determining the drug amount for sentencing, asserting that the court's determination was based on insufficient and unreliable evidence, that it failed to make specific findings, and that it failed to make a separate drug-quantity finding for statutory enhancement sentencing.

The base offense level for drug offenses may be based on drugs with which the defendant was directly involved, under U.S.S.G. § 1B1.3(a)(1)(A), and drugs which are attributed to the defendant as relevant conduct in a conspiracy, under U.S.S.G. § 1B1.3(a)(1)(B). ***United States v. Carreon***, 11 F.3d 1225, 1230 (5th Cir. 1994). Relevant conduct includes "all *reasonably foreseeable* acts and omissions of others in furtherance of jointly undertaken criminal activity". ***Id.;*** U.S.S.G. 1B1.3(a)(1)(B).

The district court found that Guerrero could reasonably foresee 3300 pounds of marijuana; Pastrano, 2378.68 pounds; Davila, 2325.61 pounds; and Gamez and Mendiola, each between 1000 and 3000 pounds.

a.

Appellants contest the calculation of the quantity of drugs attributable to them on the basis that it was not reasonably foreseeable and was based on insufficient evidence. The sentencing court's factual determination of the drug quantity is reviewed only for clear error. *United States v. Thomas*, 870 F.2d 174, 176 (5th Cir. 1989). And, the court is afforded due deference in the application of the guidelines to the facts. *United States v. Parks*, 924 F.2d 68, 71 (5th Cir. 1991). During sentencing, a district court may consider any relevant evidence with "sufficient indicia of reliability to support its probable accuracy". U.S.S.G § 6A1.3(a). Moreover, "a presentence report generally bears sufficient indicia of reliability to be considered as evidence by the trial judge in making the factual determinations required by the sentencing guidelines". *United States v. Alfaro*, 919 F.2d 962, 966 (5th Cir. 1990).

As discussed, there is ample evidence demonstrating that Appellants were participants in an extensive drug distribution operation, including also the following: Figueroa testified that approximately 3000 pounds of marijuana were received at Metroplex

in the course of the conspiracy; at sentencing, several papers seized in Guerrero's and Pastrano's residences were identified by an Agent as an inventory of marijuana, which had a total of 3300 pounds; and 173 pounds of marijuana were seized in a co-conspirator's home.

Appellants maintain that some of the evidence used for sentencing purposes was based on the unreliable testimony of Figueroa. As addressed, *supra*, his testimony did not rise to the level of being "incredible". *See* **United States v. Gadison**, 8 F.3d at 190. In addition, much of his testimony was corroborated either by drug ledgers, surveillance, or recorded telephone conversations.

Appellants contend that the drug ledgers, which were relied upon by the district court in sentencing, were unreliable. They cite **United States v. Mergerson**, 4 F.3d 337 (5th Cir. 1993), *cert. denied*, 510 U.S. 1198 (1994), which found clear error in the district court's finding, based on various hand-written papers, that the defendant possessed an amount of drugs. However, in **Mergerson**, the papers were the *sole* evidence supporting the drug amount. **Id.** Here, the district court's basis for the amounts, as detailed above, is supported with substantial evidence.

b.

Pastrano, Gamez, and Mendiola assert that the district court erred by failing to make sufficient findings concerning the drug quantity attributable to them. "[T]he court must make either a

- 24 -

finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing." FED. R. CRIM. P. 32(c)(1). "A defendant is generally provided adequate notice of the district court's resolution of the disputed facts when the court merely adopts the findings of the [presentence report]." *United States v. Mora*, 994 F.2d 1129, 1141 (5th Cir.), *cert. denied*, 510 U.S. 958 (1993). Moreover, "it is proper for the district court to rely on a presentence report's construction of evidence to resolve a factual dispute, rather than relying on the defendant's version of the facts." *United States v. Robins*, 978 F.2d 881, 889 (5th Cir. 1992) (citations omitted).

The district court made a separate drug quantity finding for each Appellant. It found specifically that the drug quantity attributed to Davila, Mendiola, and Pastrano was reasonably foreseeable from their jointly undertaken criminal activity. These findings satisfy Rule 32.

c.

Pastrano, Davila, Gamez, and Mendiola assert that the court erred by including "negotiated" drug amounts in the 21 U.S.C. § 841(b)(1)(A) enhancement sentencing. They point to **Mergerson**, which states, "Mere proof of the amounts 'negotiated' with the undercover agents ... would not count toward the quantity of [drugs] applicable to the conspiracy count." 4 F.3d at 346.

Pastrano, Davila, and Gamez contend also that the district court erred by adopting the presentence report drug quantity, which was based on "relevant conduct", instead of performing a separate drug-quantity finding for "negotiated amounts". Appellants again cite *Mergerson* for the proposition that the court "must engage in two separate sufficiency analyses regarding the district court's findings". 4 F.3d at 345.

We find that evidence of the amounts of marijuana actually possessed by the co-conspirators in the course of the conspiracy is a sufficient basis for the district court's quantity findings under § 841(b)(1)(A). *See United States v. Ruiz*, 43 F.3d 985, 992 (5th Cir. 1995) ("[T]he quantity of drugs involved in a conspiracy for guideline sentencing purposes apply in determining whether to impose the statutory minimums prescribed in § 841(b)."). In so holding, it is not necessary to address whether Appellants were entitled to a separate finding for "negotiated amounts" under *Mergerson*.

2.

Pastrano claims that the district court erred in increasing his base offense level by two levels under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm during the commission of a drug offense. The adjustment is applicable if the weapon was present during the commission of the drug offense, "unless it is clearly improbable that the weapon was connected with the offense."

U.S.S.G. § 2D1.1, cmt. 3; *United States v. Sparks*, 2 F.3d 574, 587 (5th Cir. 1993) (citation omitted), *cert. denied*, 510 U.S. 1080 (1994). The district court's decision to apply the two-level increase is a factual determination, reviewed only for clear error. *United States v. Paulk*, 917 F.2d 879 (5th Cir. 1990).

Pastrano contends that the Government failed to establish that the weapons seized in his residence were connected to the offense. They were found in Pastrano's bedroom along with drug ledgers. Evidence at trial demonstrated that Pastrano was an active participant in an extensive drug distribution operation. This evidence does not demonstrate that it is clearly improbable that the guns were linked to the marijuana conspiracy, or that the district court was clearly erroneous in so finding.

Pastrano asserts also that the phrase "unless clearly improbable" from U.S.S.G. § 2D1.1(b)(1) constitutes an unconstitutional shift of the burden of proof from the Government to the defendant. Pastrano did not raise this issue in district court; therefore, again, we review only for plain error, as earlier defined. We find no "clear" or "obvious" error by the trial court. *See United States v. Ortiz-Granados*, 12 F.3d 39, 41 (5th Cir. 1994) (rejecting contention that "clearly improbable" standard should be "replaced" because it violates due process by shifting burden of proof from Government to defendant) (citing *United States v.*

*Webster*, 960 F.2d 1301, 1310 (5th Cir.), *cert. denied*, 506 U.S. 927 (1992)).

3.

Pastrano claims next that the court erred by enhancing his base offense level by three levels for being a manager of criminal activity involving five or more participants. U.S.S.G. § 3B1.1(b). He maintains that there is insufficient evidence demonstrating that he was such a manager, and that he, Davila, Gamez, and Figueroa were equals. A district court's sentencing-factor findings are not clearly erroneous as long as it is plausible in the light of the record as a whole. *United States v. Whitlow*, 979 F.2d 1008, 1011 (5th Cir. 1992). And, the defendant's role may be inferred from available facts. *See United States v. Menthei*, 913 F.2d 1130, 1135 (5th Cir. 1990). Again, "it is proper for the district court to rely on a presentence report's construction of evidence to resolve a factual dispute, rather than relying on the defendant's version of the facts." *United States v. Robins*, 978 F.2d 881, 889 (5th Cir. 1992) (citations omitted).

The presentence report provided sufficient findings to support the inference that Pastrano was a manager, including: the existence of a large-scale drug distribution enterprise; Pastrano's role as supplier of marijuana from Guerrero; and Pastrano's role in obtaining, negotiating, and distributing marijuana.

4.

Mendiola asserts that the court erred in assessing an increment in his sentence for multiple offenses under U.S.S.G § 5G1.3(c). This issue involves an application of the Guidelines and requires *de novo* review. ***United States v. Gross***, 26 F.3d 552, 554 (5th Cir. 1994). Section 5G1.3(c) provides that, for cases not covered by subsections (a) and (b), "the sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense".

Mendiola contends that U.S.S.G. § 5G1.3(c) does not apply because the instant case and the separate conspiracy case (No. 95-50177) are the same case. As discussed *supra*, this premise is incorrect.

H.

Guerrero, Pastrano, Davila, and Gamez contend that they are prejudiced by an incomplete record on appeal. The Government's rebuttal closing argument was not recorded due to mechanical failure, and its Notice of Intent to Use Evidence Pursuant to Rule 404(b), which the docket sheet reflects was filed, is not in the record.

These Appellants, who have different counsel on appeal than at trial, cite ***United States v. Neal***, 27 F.3d 1035, 1044 (5th Cir.

1994) (citation and internal quotation omitted) (emphasis added), *cert. denied*, 513 U.S. 1179 (1995), for the proposition that, when "a criminal defendant is represented on appeal by counsel other than the attorney at trial, the absence of a *substantial and significant portion* of the record, even absent any showing of specific prejudice or error, is sufficient to mandate reversal".

The rebuttal closing argument and Rule 404(b) notice does not constitute a significant portion of the record, which consists of 27 volumes and a transcript of over 2400 pages, and does not omit any portions which prejudice these Appellants' claims.[3] Accordingly, the omission is harmless error. *See **United States v. Selva***, 559 F.2d 1303, 1306 n.5 (5th Cir. 1977); FED. R. CRIM. P. 52. (Although it is not dispositive, it is at least of interest that Mendiola, the only Appellant not represented by counsel on appeal different from that at trial, does not challenge the incomplete record as prejudicial.)

I.

Davila, Gamez, and Mendiola also challenge the denial of their new trial motion. How this issue arose is addressed in our opinion

---

[3]    We note that it is incumbent upon the Appellant to "take any other action necessary to enable the clerk to assemble and transmit the record". FED. R. APP. P. 11(a). Upon learning of any omission, the Appellant may follow the procedures prescribed in FED. R. APP. PRO. 10(c) to attempt to reconstruct the record. This process was designed to prevent the situation presented here, in which these Appellants raise the issue of an incomplete record, considered on appeal *more than three years after the end of trial*.

in No. 95-50177 (which includes No. 97-50407). Briefly stated, impeachment evidence concerning confidential informant Moises Perez and FBI Agent Montoya, both of whom were Government witnesses at trial, was not disclosed to the defense. While appeal in the instant case was pending, the Government dismissed a separate criminal case in which Perez was testifying because they had lost confidence in his credibility as an informant.

As a result, Appellants moved for a new trial. And, as discussed, the motion was denied without a hearing.

1.

It is claimed that the nondisclosure of the impeachment evidence violated *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States,* 405 U.S. 150 (1972). *Brady* rulings are reviewed *de novo*. *United States v. Green*, 46 F.3d 461, 464 (5th Cir.), *cert. denied*, ___ U.S. ___, 115 S. Ct. 2629 (1995). *But see United States v. Krenning*, 93 F.3d 1257, 1268 (5th Cir. 1996) (standard of review for denial of new trial motion is abuse of discretion). The applicable legal standards are addressed in our opinion in No. 95-50177.

As detailed *supra*, there is overwhelming independent evidence of Appellants' guilt; therefore, no *Brady* violation. *See Kyles v. Whitley*, 514 U.S. 419, 435 (1995) (reversal of nondisclosure requires "reasonable probability" that "could reasonably be taken to put the whole case in such a different light as to undermine

- 31 -

confidence in the verdict"); ***Wilson v. Whitley***, 28 F.3d 433, 439 (5th Cir. 1994) ("In assessing the materiality of undisclosed impeachment evidence, we must consider the nature of the impeachment evidence improperly withheld and the additional evidence of the defendant's guilt independent of the disputed testimony.") (citation and internal quotation omitted), *cert. denied*, 513 U.S. 1091 (1995).

2.

Along this line, Appellants contend also that the Government allowed false testimony. They must demonstrate: (1) that the testimony was false; (2) that the prosecution knew it was false; and (3) that the evidence was material. ***United States v. Scott***, 48 F.3d 1389, 1394 (5th Cir.), *cert. denied*, ___ U.S. ___, 116 S. Ct. 264 (1995). For the reasons stated above, the testimony was not material to the outcome of the case.

3.

Finally, Davila maintains that the district court erred in not providing an FBI investigation file concerning the Agent, which the court reviewed *in camera*. We review for abuse of discretion. *Cf.* ***United States v. Neal***, 27 F.3d at 1049 (5th Cir. 1994) (discovery rule issues reviewed for abuse of discretion and reversed only if substantial rights prejudiced). The district court was within its discretion in refusing to provide the report after viewing it *in camera*.

III.

For the foregoing reasons, the convictions and sentences (No. 95-50140), and denial of a new trial (No. 97-50401) are

**_AFFIRMED._**